# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF PUERTO RICO

**MANUEL BABILONIA**
**AND**
**MILTA CORTES**
**A/k/a**
**MIRTA CORTES**

**CASE NO. 16-01148**
**CHAPTER 11**

## PLAN OF REORGANIZATION

**MANUEL BABILONIA AND MILTA CORTES** ("Debtor") hereby proposes the following **Plan** of Reorganization (the "Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"<u>Administrative Claim</u>" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) (1) of the Bankruptcy Code, including, without limitation:

(a)     fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

(b)     All fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930.

"<u>Allowed</u>" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     Any Claim expressly Allowed under the Plan or pursuant to the Confirmation Order.

"<u>Banco Popular or BPPR or the Bank</u>" shall mean Banco Popular de Puerto Rico.

"<u>Bankruptcy Case</u>" shall mean the Debtor's Chapter 11 case pending in the Bankruptcy Court.

"<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as

promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Dates" shall mean January 12, 2012, fixed as the due date for the filing of proofs of claim by creditors asserting Claims against Debtor, other than governmental units, as stated in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" issued by the Clerk of the Bankruptcy Court in  each Debtor's Bankruptcy Case, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in distributions under the Plan.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor or an affiliate of the Debtor, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000.00).

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of (1) the date that such claim becomes due and payable in accordance with its terms or thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Plan.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article III of the Plan.

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"CRIM" shall mean Centro de Recaudación de Ingresos Municipales.

"Debtor" shall mean MANUEL BABILONIA AND MILTA CORTES

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)     If no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)     A Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

 "Distribution Record Date" shall mean the Business Day preceding the Effective Date.

 "Effective Date" shall mean the date which is SIXTY DAYS (60) days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article IX of the Plan have not been satisfied or waived pursuant to Section 9.2 of the Plan, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

"Final Decree" shall mean the order of the Court closing Debtor's case after Debtor's estate is fully administered.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review, re-argument or *certiorari* of the order has been sought, the order has been affirmed or the request for review, re-argument or *certiorari* has been denied and the time to seek a further appeal, review, re-argument or *certiorari* has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

 "General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"**Impaired Class or Interest**" shall mean a class or interest as to the holders of which the Plan alters its legal, equitable or contractual rights**.**

 "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Order of Relief" shall mean the date of the entry of the order of relief.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

"Petition Date" shall mean February 18, 2016, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Plan" shall mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, if any, and all exhibits, supplements, appendices and schedules hereto and thereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Plan Documents" shall mean and include such agreements, instruments and documents as may be required to effectuate the terms of this Plan.

"Priority Claims" shall mean any and all Claims (or portions thereof), entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a) (8) of the Bankruptcy Code.

"Professionals" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the

Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b) (4) of the Bankruptcy Code.

"*Pro Rata*" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007; as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

## ARTICLE II
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1 <u>Non-Classification</u>. In accordance with Section 1123(a) (1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified in the Plan. A description of the unclassified claims and the claims in each class, as well as the estimated principal amounts of each as of the Effective Date and their treatment, are set forth below.  Administrative Expense Claims are generally the ordinary and necessary

costs of administering and operating during a Chapter 11 case.

      2.2    <u>Administrative Expense Claims</u>.

      (a)    <u>General</u>. Except as otherwise agreed to by Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, and (ii) the Effective Date. If Debtor or the Reorganized Debtor disputes any portion of an Administrative Expense Claim, Debtor or the Reorganized Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

      (b)    <u>U.S. Trustee's Fees</u>. Any pending United States Trustee's quarterly fees shall be paid in full pursuant to 11 U.S.C. § 1930 on or before the Effective Date.

      (c)    <u>Professional Compensation and Expense Reimbursement Claims</u>.

      The professionals retained in Debtor's Chapter 11 cases have and will incur fees and expenses from the date of their retention through the Effective Date of the Plan.  It is impossible to predict the amount of additional professional administrative expense fees that will be incurred through the Effective Date of the Plan.   All amounts paid to professionals through the Confirmation Date, are subject to final Bankruptcy Court approval.

      2.3    <u>Pre-Petition Priority Tax Claims</u>.  Priority Tax Claims are Claims entitled to priority pursuant to Section 507(a) (8) of the Bankruptcy Code.  Such Priority Tax Claims may consist of taxes owing to Centro de Recaudaciones de Ingresos Municipales ("CRIM"), and to the Department of the Treasury of Puerto Rico and Tourism Company which may have accrued prior to the Petition Date and are allowed as Priority per order

entered.

Holders of an Allowed Priority Tax Claim, secured or unsecured, shall be paid by Debtor either (i) upon such terms as may be agreed with such Holder of an Allowed Priority Tax Claim; (ii) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Case had not been commenced or (iii) as allowed by section 1129(a)(9)(C).

## ARTICLE III

## CLASSES OF CLAIMS AND EQUITY INTEREST

As of the Petition Date, Debtor had secured debt, priority unsecured and non-priority unsecured debt, as more particularly described below.  The Plan classifies the various claims against Debtor. A description of all classes of Claims and the Equity Interests, the estimated principal amounts of each Class as of the Effective Date and its treatment are set forth below as follows:

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### Class 1 Class of Secured Claims:

Allowed Secured Claims are claims secured by a lien on property on which the Debtor has an interest, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to set off   as the case may be as allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor allowed claim, the deficiency will be classified as a general unsecured deficiency claim.

Class 1 (A) Banco Popular de Puerto Rico a POC # 10 was filed by Banco Popular on June 13, 2016 claiming the amount of $1,260,000.00 as secured.  Claimant is the holder of several mortgage notes encumbering debtor's properties.

Class 1(B) Cooperativa San Rafael filed POC # 8 and 5 in the amount of 172,828.68 and 10,701.99 respectively.  Claimant is the holder of mortgage note in the amount of $175,000.00. Creditor is debiting the payment against the balance of debtor's shares in the cooperative which are also pledged.

Class1(C) Cooperativa Isabela filed a POC # 4 in the amount of $53,054.19. Claimant is the holder of mortgage note in the amount of $69,300.00

Class1-(D) First Bank Puerto Rico has not yet file a POC. There is a final judgment entered against debtors its execution has been stayed.

Class 1 (E) Centro de Recaudación Ingresos Municipales(CRIM) file a secured proof of claim of which the entity is claiming as secured the amount of 3,219.89.

**Classes of Priority Unsecured Claims**

**Priority Class 2** Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive on the effective date of the Plan equal to the allowed amount of such claim it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the other of relief or as otherwise agreed in writing with each priority claimant

Class 2(a) Puerto Rico Tourism Co. in the amount of $58,650.00(per POC # 12, dated June 30, 2016. It also filed POC # 13 in the amount of $25,608.00 Which

consist of the unsecured Hotel Room Tax that are entitled to priority pursuant to §507 (a)(8)(C). The Plan shall provide for payment within the time period provided for such claims under the provision of the Bankruptcy Court absent a different agreement for the payment.  It is anticipated that the Debtor will file an objection to the allowance of said claims. Once allowed the amount finally determined to be owed by the Debtor shall be paid pursuant to the provisions of the Bankruptcy Code regarding priority claims.

Class 2 (c) Fondo del Seguro del Estado in the amount of $ 1,313.21 (POC # 9 (the deadline for filing governmental claims has not yet elapsed).  The Plan shall provide for payment of the allowed claim within the time period provided for such claims under the provision of the Bankruptcy Court absent an agreement for the payment.


### Class 3 of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code as duly allowed by the Court.


 This claim shall may receive any dividends or payment in the plan from proceeds generated from the normal course of operation od Debtor's hostel Business, Home Away income and other income. the debtor will dedicate all available income to paid the unsecured claims after operating expenses and payment to secured claimants.

(2) Impairment and Voting:

Class 3 General Unsecured claim is impaired under the Plan, thus has a right to vote in favor or against the Plan.

### Class 4 Class of Interest

 This class   consist of the stockholders Mr. Manuel Babilonia and Ms. Milta Cortes aka Mirta Cortes.  They will not receive or retain any property under the Plan unless there is a surplus after payments to Secured, Priority claimants and general unsecured claimants

## ARTICLE IV

### TREATMENT OF CLAIMS

Class 1 (a) - Secured Claim of BPPR

(a)    Impairment and Voting    Class 1 is impaired under the Plan.  BPPR will be entitled to vote to accept or reject the Plan.

(b)    Distribution

BPPR shall receive the treatment and distribution afforded at the "Joint Stipulation (the "Joint Stipulation") which will be filed and subject to the disposition by this Honorable Court.  In the unforeseeable event that the Joint Stipulation is not approved by the Court, Debtor shall incorporate the terms and provisions of the Joint Stipulation to an Amended Plan as if fully transcribed at length therein, and shall provide treatment to BPPR pursuant to the incorporated terms of the Joint Stipulation.

Class 1(B) Cooperativa San Rafael filed POC # 8 and 5 in the amount of 172,828.68 and 10,701.99 respectively.  Claimant is the holder of mortgage note in the amount of $175,000.00. Creditor is debiting the payment against the balance of debtor's shares in the cooperative which are also pledged.

a) Impairment and Voting Class 1 is unimpaired under the Plan.  Cooperativa San Rafael is deemed to have accepted or reject the Plan.

(b) Distribution

Creditor is debiting the payment against the balance of debtor's shares in the cooperative which are also pledged.

Class1(C) Cooperativa Isabela filed a POC # 4 in the amount of $53,054.19. Claimant is the holder of mortgage note in the amount of $69,300.00

(a)Impairment and Voting Class 1 is impaired under the Plan.  Class 1 (c) will be entitled to vote to accept or reject the Plan.

(b)Distribution

Upon the sale of the property encumbered with a lien in favor of claimant the proceeds shall be tendered to creditor in full satisfaction of its claim.

Class1-(D) First Bank Puerto Rico has not yet file a POC. There is a final judgment entered against debtors its execution has been stayed.

(a)     Impairment and Voting      Class 1 is impaired under the Plan.  Class 1 (d) will be entitled to vote to accept or reject the Plan.

(b) Distribution

First Bank Puerto Rico holds a second mortgage over the Debtor's residence, upon sale of the property and payment to the Banco Popular first security liens any remaining proceeds shall be tendered in payment in full of its secured interest.

Class 1 (E) Centro de Recaudación Ingresos Municipales(CRIM) file a secured proof of claim of which the entity is claiming as secured the amount of 3,219.89.

(a)Impairment and Voting Class 1 is unimpaired under the Plan.  Class 1 (e) is deemed to have accepted the plan.

(b)Distribution

 Upon the sale of the property securing said claim any proceeds shall be tendered to claimant.

Class 2 - Priority Claims

(a)     <u>Impairment and Voting</u> Class 2 is unimpaired under the Plan. Each holder of an Allowed Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> Holders of Allowed Priority Claims shall receive in full satisfaction thereof an amount in Deferred Cash equal to the Allowed amount of such Claim on the Effective Date or when such Claim becomes Allowed, or as otherwise may be agreed to by each such claimant and Debtor.


Class 3 - Unsecured creditors.

(a) <u>Impairment and Voting</u>Class 3 is impaired under the Plan and will be entitled to vote to accept or reject the Plan.

(b)<u>Distribution</u>

This class shall receive pro rata payments out of the proceeds of the sale of the properties and or Debtor business income proceeds after payments of Priority Claims and Secured claims.


Class 4–  Individual's Interest

(a) <u>Impairment and Voting</u> Class 4 is impaired under the Plan. Holders of an equity interest in Debtor are not entitled to vote as they are deem have rejected the Plan since the Plan does not entitle them to receive or retain any property thereunder on account of such interests.

(b)Treatment

They will not receive or retain any property under the Plan unless there is a surplus after payments to Secured, Priority claimants and general unsecured claimants

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Except as otherwise provided in the Plan, Debtor will effect payment of all Administrative Expense Claims and Convenience Claims within 30 days of the Effective Date Priority Tax Claims and all Unsecured Claims, except as otherwise provided for in the Plan, will be paid with the available funds originating either from sale after payment to secured claims and from Debtor business.

5.2     Method of Distributions under the Plan.

(a)     In General. Subject to Bankruptcy Rule 9010, all distributions under the Plan to the Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as the same may have been amended, as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address List. Debtor shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

(b)     <u>Distribution to be on Business Day</u>. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(c)     <u>Fractional Dollars</u>. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50, and rounding up in the case of more than $0.50).

(d)     <u>Distribution to Holders as of the Distribution Record Date</u>. As of the close of business on the Distribution Record Date, the claims register shall be closed.  Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

5.3     <u>Objections to Disputed Claims</u>.  Any objections to Claims against Debtor shall be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

5.4     <u>Deadlines for Objecting to Disputed Claims</u>.  Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

5.5    <u>Estimation of Claims</u>.    Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or an objection thereto. Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtor from pursuing any additional proceedings to object to any ultimate payment of the Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All those proceedings are cumulative and not exclusive remedies.

(b)    <u>Investment of Cash</u>.  Cash in the respective Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance to this Plan, if and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for Debtor's benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtor.

(c)    <u>Distribution Upon Allowance of Disputed Claims</u>. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based

upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve until the Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on the Disputed Claim.

5.7     <u>Reversion of Unclaimed Checks and Disputed Claims Reserve</u>. The following amounts shall revert and be vested in Debtor, as to the claims to be paid under the Plan, free and clear of any claim or interest of any Holder of that Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 90 days after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

## ARTICLE VI

## VOTING ON THE PLAN

6.1     <u>Voting of Claims</u>.  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

6.2     <u>Nonconsensual Confirmation</u>.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided for in Sections 1126(c)

or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, Debtor reserves the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 11.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

## ARTICLE VII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES AND

## POST-PETITION CONTRACTS

7.1      <u>Rejection of Executory Contracts and Unexpired Leases</u>. Any executory contract or unexpired lease (other than insurance policies) which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending on the Confirmation Date, shall be deemed <u>rejected</u> on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty-five (45) days following the Confirmation Date.   Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

Debtor will assume the lease agreement with First Bank related to a vehicle Toyota Tacoma.

7.2     Rejection Damage Claims. If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties, its agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before thirty (30) days following the Confirmation Date.  Debtor retains the right to further object to any rejection damages claims filed in accordance with this Section.

## ARTICLE VIII

## RELEASE AND DISCHARGE OF CLAIMS

8.1     Discharge. Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, and release of Debtor and its guarantors of any debt that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against Debtor or its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.

8.2     <u>Injunction Relating to the Plan</u>. As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor or its Estate on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted hereunder.

8.3     <u>Cancellation of Existing Indebtedness and Liens</u>.  Except as may otherwise be provided for in the Plan, on the Confirmation Date, pursuant to Sections 363(k), 1123(a)(5), 1129(b)(2)(A)(ii), and 1141(c) of the Bankruptcy Code, all Property transferred, treated, or dealt with in the Plan or the Confirmation Order is free and clear of all liens, Claims, interests, and encumbrances. Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing the same, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor and its guarantors' obligations thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing the Claim.

8.4   <u>Setoffs</u>.   Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

9.1 Conditions <u>Precedent to Effectiveness</u>. The Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 9.2 hereof:

(a)   The Confirmation Order, in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)   each of the Plan Documents, in form and substance reasonably acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court;

(c)   All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(d)   The Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

9.2   <u>Waiver of Conditions</u>. Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in this Section, except that Debtor may not waive the condition that the Estate will have sufficient Cash to meet all of

Debtor's payment and funding obligations under the Plan on the Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 5.6(a) hereof.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    <u>Retention of Jurisdiction</u>.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a)    To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any disputed Claim;

(b)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2(c) hereof;

(c)    To determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(d)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(e)    To enforce the provisions of the Plan subject to the terms thereof;

(f)    to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(g) To determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XI

## PROVISIONS FOR INCLUSION IN DEBTOR'S CHARTER

11.1 Debtor shall take such action as may be necessary to the end that Debtor's charter shall contain:

(a) provisions prohibiting Debtor from issuing non-voting stock, and providing, as to the classes of Debtor's securities possessing voting power, for the fair and equitable distribution of such power among such classes, including, in the case of any class of stock having preference over other stock with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends;

(b) provisions which are fair and equitable and in accordance with sound business and accounting practices, with respect to the terms, positions, rights and privileges of the several classes of Debtor's securities, including without limiting the generality of the foregoing, provisions with respect to the issuance, acquisition, purchase and payments of dividends thereon; and provisions with respect to the making not less than once annually, of periodic reports to equity security holders which shall include profit and loss statements and balance sheets prepared in accordance with sound business and accounting practices; and

(c) provisions that Debtor will not pay dividends to its shareholder, nor to any other shareholder, which may exist in the future, until creditors are paid in accordance with the Plan.

## ARTICLE XII

## MISCELLANEOUS

12.1 Continuation of Injunctions or Stays until Effective Date. All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.2     Exemption from Transfer Taxes. Pursuant to Section 1146 of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax or similar tax:

(a)     the transfer, sale, or vesting of any real property under the terms of the plan by the Debtor, and any instruments executed and delivered in connection therewith, including without limitation any deeds;

(b)     the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan;

(c)     the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Plan;

(d)     the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment. Consistent with the foregoing, officials of a governmental unit in which any

instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

Consistent with the foregoing, public officials in charge of inspecting public deeds for compliance of payment of any stamp taxes (such as inspectors of protocols) or officials of any governmental unit in which any instrument hereunder is to be recorded, (including without limitation, property registrars, recorders of deeds, etc.) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, including, without limitation, any deed of transfer from the Debtor, or corrective deed related thereto executed by the Debtor, without requiring the payment of any documentary recording tax, stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

12.3    <u>Amendment or Modification of the Plan</u>. Alterations, amendments or modifications of the Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely

change the treatment of the Claim of such holder. Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit thereto or in any Plan Document.

12.4     Severability.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

12.5 Revocation or Withdrawal of the Plan.  Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

12.6  <u>Binding Effect</u>.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

12.7 Notices.  All notices, requests and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

With a copy to:

Isabel M. Fullana
252 Ponce de León Ave.
Suite 1101
San Juan, PR 00910
Tel. 787 766-2530
Fax 787 756-7800
Email address isabelfullana@gmail.com

12.8 <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

12.9  <u>Withholding and Reporting Requirements</u>.  In connection with the consummation of the Plan, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all

distributions hereunder shall be subject to any such withholding and reporting requirements.

12.10 <u>Plan Documents</u>. Upon filing with the Bankruptcy Court, the Plan Documents may be inspected at the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Plan Documents upon written request to Debtor in accordance with Section 11.7 hereof. Any Plan Documents are incorporated into and made a part of the Plan, as if fully set forth in full herein.

12.11 <u>Post-Confirmation Fees, Final Decree</u>. Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court. A final decree shall be entered as soon as practicable after initial distributions have commenced under the Plan.

12.12 <u>Headings</u>. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

12.13 <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

12.14 <u>Inconsistency</u>. In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this ___ day of August 2016

S/ MANUEL BABILONIA AND MILTA CORTES
Debtor in Possession


**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will send notification of such filing

to the parties appearing in said systems including the US Trustee.


GARCIA-ARREGUI & FULLANA PSC

Attorney for Debtor
252 Ponce de León Ave.
Citibank Tower, Suite 1101
Hato Rey, PR 00918
Tel.: (787) 766-2530
Fax: (787) 756-7800
E-mail: isabelfullana@gmail.com

/ S / Isabel M. Fullana
USDC No. 12802